UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MATTHEW A. STEIN,

        **Plaintiff,**

        v.

SECRETARY LLOYD J.
AUSTIN, III, *et al.*,

        **Defendants.**

**Case No. 2:24-cv-990**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## OPINION AND ORDER

This matter is before the Court on Defendant Aaron McGuire's Motion to Dismiss for Lack of Jurisdiction (McGuire Mot., ECF No. 8) and the Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim filed by Defendant Lloyd J. Austin, III, Secretary of the United States Department of Defense (Austin Mot., ECF No. 9). Plaintiff Matthew A. Stein, who is proceeding without the assistance of counsel, opposed both Motions. (McGuire Opp., ECF No. 10; Austin Opp., ECF No. 11.) For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Secretary Austin's Motion (ECF No. 9) and **GRANTS** Defendant McGuire's Motion (ECF No. 8).

## I.      BACKGROUND

Mr. Stein is employed as a Contract Specialist for the Defense Logistics Agency ("DLA") located at the Defense Supply Center Columbus. (*See* Compl., ECF No. 1, PageID 9.) DLA is an agency of the United States Department of Defense ("DOD"). (*Id.*; Austin Mot., PageID 130.) Mr. Stein claims that he had a sincere religious objection to the DOD's COVID-19 vaccination, testing, and masking requirements. (*See* Compl.)

1

### A.  Factual Background

The Parties' dispute began after President Biden issued Executive Order No. 14043 in response to the public health emergency caused by COVID-19. *See* Exec. Order No. 14043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, 86 Fed. Reg. 50,989 (Sept. 14, 2021). This Executive Order required all federal civilian employees to get the COVID-19 vaccine. *Id.* at 50,990. In response to the Executive Order, the DOD required its civilian employees to be fully vaccinated by November 22, 2021. (*See* ECF No. 9-1, Force Health Protection Guidance (Supplement 23) Revision 3 (Dec. 20, 2021).) Mr. Stein was an employee and thus subject to the vaccination mandate, but religious exemptions were permitted. (*Id.* PageID 155.) DOD employees who were not fully vaccinated were required to comply with certain masking, testing, physical distancing, and travel restrictions. (*Id.*)

Executive Order No. 14043 faced legal challenges, including a nationwide injunction that remained in effect for over a year. *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836–37 (S.D. Tex. 2022), *aff'd*, 63 F.4th 366 (5th Cir. 2023) (en banc), *vacated as moot*, 144 S. Ct. 480 (2023).[1] After these legal challenges, the DOD issued new guidance withdrawing certain protocols tied to an employee's vaccination status. (*See* ECF No. 9-2, Consolidated Department of Defense Coronavirus Disease 2019 Force Health Protection Guidance—Revision 4 (Jan. 30, 2023).) President Biden, citing improving public health conditions, then issued Executive Order No.

---

[1] The DOD mandate requiring all members of the armed services to be vaccinated faced a similar legal challenge. *See Doster v. Kendall*, 54 F.4th 398, 406 (6th Cir. 2022), *reh'g denied*, 65 F.4th 792 (6th Cir. 2023) (en banc) (enjoining the vaccination requirement for members of the armed services). But after Executive Order 14099 revoked the vaccination requirement, the defendants in that case petitioned the Supreme Court to vacate the preliminary injunctions as moot. *Id.* The Supreme Court ordered the requested relief, and in time, the district court in *Doster* dismissed the case on mootness grounds. *Doster v. Kendall*, No. 1:22-CV-84, 2024 U.S. Dist. LEXIS 47201 (S.D. Ohio Mar. 18, 2024) (McFarland, J.) (following the Supreme Court's instruction in *Kendall v. Doster*, 144 S. Ct. 481 (2023)).

14099, revoking the vaccination requirement for all DOD civilian employees. *See* Exec. Order No. 14099, Moving Beyond COVD-19 Vaccination Requirements for Federal Workers, 88 Fed. Reg. 30,891 (May 15, 2023). After that Executive Order, the DOD ended its COVID-19-specific safety measures. (*See* ECF No. 9-3, Force Health Protection Guidance—Coronavirus Disease 2019 and Other Infectious Respiratory Diseases (July 26, 2023).)

Mr. Stein filed this Complaint on March 1, 2024. (Compl.) He alleges that he communicated to his supervisors in October 2021 that the DOD's "vaccination, testing and masking requirements conflict[ed] with [his] sincerely held religious beliefs . . . and requested a Religious Reasonable Accommodation." (*Id.* PageID 9, 18.) He explained that:

> As a Christian, I am commanded to not defile my body with unwanted intrusions such as vaccines [and] nasal testing. Any unwanted intrusion into the body temple is an affront to God. My body is the temple of the Holy Spirit and I am required to keep my body and blood pure. I worship God and express my religion through this practice and observance of keeping my body pure[.] Further, participating in the deception of testing when you're not sick is a further transgression against God's truth. God does not allow for this type of deception, which is evil.

(*Id.* PageID 12.)

As an accommodation to the vaccination requirement, Mr. Stein requested that he be allowed to work from home. (*Id.* PageID 9, 18.) While his religious exemption was under review, he alleges that he was told by his Division Chief that:

> You have the option to report to the office and comply with testing, wear a mask and social distance. If you fail to comply you will be charged with AWOL [Absence Without Leave]. If you report to the office and do not comply with the previously noted steps, you will be sent home.

(*Id.* PageID 10–11, 21.) He claims that his request for an exemption was denied because his beliefs were "philosophical concerns and more secular, than religious in nature." (*Id.* PageID 12.)

Because Mr. Stein refused to comply with the testing, masking, and social distancing requirements, he was disciplined by being charged with absence without leave ("AWOL") one

3

working day per week, per DLA's standard practice. (*See id.* PageID 21, 26–28.) To charge him with AWOL, Mr. Stein alleges that his supervisor consulted Defendant McGuire, a Human Resources Specialist in the Labor and Employee Relations Department of DLA. (*Id.* PageID 29.) As a result, he seeks damages for "willful neglect of religious reasonable accommodation" from Defendant McGuire "whom [is] presumed to [have] recommend[ed] AWOL charges against [Mr. Stein]." (*Id.*) This paragraph is the only factual allegation related to Defendant McGuire's conduct in the Complaint. (*See* Compl.)

### B. Procedural Background

In November 2022, Mr. Stein filed a formal Equal Employment Opportunity complaint of discrimination asserting that he was subject to unlawful discrimination based on his Christian religion. (*Id.* PageID 15 (Step 4 in Table 5.1.1).) A year and a half later, in March 2024, he filed this lawsuit. (*See* Compl.) He characterizes the nature of his lawsuit as a religious discrimination claim seeking to "correct unlawful employment practices based on religion" under the "Religious Freedom Rest[o]ration Act" and "Title VII of the Civil Rights Act." (*Id.* PageID 6.) His requested relief includes "appropriate monetary and non-monetary relief for denial of religious accommodation, unpaid salaries when declared AWOL, [and] attorney fees."[2] (*Id.*)

The Court construes Mr. Stein's Complaint as alleging claims for: (1) religious discrimination—failure to accommodate in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, (2) religious discrimination—disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, (3) a religiously hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*,

---

[2] The Court notes that Mr. Stein is proceeding without the assistance of counsel and does not have an attorney.

(4) violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb-1, and (5) for intentional infliction of emotional distress. (*See* Compl.) He sues Defendant McGuire in his individual capacity and Secretary Austin in his official capacity. (*Id.* PageID 7.)

Defendant McGuire moved to dismiss the claims against him under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (McGuire Mot.) He argues that Mr. Stein has failed to state a claim for relief because he has not alleged a substantial burden to his religious exercise, and even if he had, Defendant McGuire is entitled to qualified immunity. (*Id.* PageID 109.) Secretary Austin also moved to dismiss, arguing that (1) Mr. Stein failed to state a claim on which relief may be granted, (2) Mr. Stein lacks standing to seek prospective relief, and (3) Secretary Austin is entitled to sovereign immunity. (Austin Mot., PageID 132.)

## II.    STANDARD OF REVIEW

### A.  Federal Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case. *Lightfoot v. Cendant Mortg. Corp.,* 580 U.S. 82, 92 (2017). Motions to dismiss for lack of subject matter jurisdiction are either facial attacks or factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Defendants raise both a facial and a factual challenge to the Court's jurisdiction. (Austin Mot., PageID 133.)

A facial attack challenges the sufficiency of the pleading itself, and the district court accepts the allegations of the complaint as true. *Ritchie*, 15 F.3d at 598. To survive a facial attack, the complaint must contain a "short and plain statement of the grounds" for jurisdiction. *Dehen v. Ohio State Univ.*, No. 2:23-cv-517, 2023 U.S. Dist. LEXIS 132477, at *4 (S.D. Ohio June 5, 2023) (Watson, J.) (citing *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016)).

5

On the other hand, the factual allegations in a complaint subject to a factual challenge are not entitled to a presumptive truthfulness. *Ohio Nat'l Life Ins. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The Court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Id.* (allowing courts to consider "affidavits, documents and even a limited evidentiary hearing" to "resolve disputed jurisdictional facts").

### B. Federal Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. While Rule 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (clarifying plausibility standard from *Twombly*). Further, "[a]lthough for purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly,* 550 U.S. at 555) (internal quotations omitted).

### C. *Pro Se* Pleading Standard

Since Mr. Stein brings this action without the assistance of counsel, he is entitled to a liberal construction of the Complaint. *Pro se* complaints are construed liberally and held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). But this more lenient standard has limits. *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th

Cir. 2012). Courts "should not have to guess at the nature of the claim asserted." *Id.* (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. ANALYSIS

Mr. Stein challenges both the DOD's requirement that civilian employees become vaccinated and the DOD's safety protocols for unvaccinated employees. As discussed below, the DOD policies related to COVID-19 are no longer in effect, thus mooting Mr. Stein's claims for prospective injunctive relief. Mr. Stein also seeks monetary damages for alleged violations of Title VII of the Civil Rights Act of 1964, the Religious Freedom Restoration Act ("RFRA"), and a state-law claim for intentional infliction of emotional distress. The Court addresses each of Mr. Stein's claims in turn.

### A. Mr. Stein's claims for prospective injunctive relief are moot.

Secretary Austin argues that Mr. Stein's request for prospective injunctive relief is moot because the policies requiring him to get the COVID-19 vaccine have been rescinded. (Austin Mot., PageID 137–39.)

Article III of the Constitution limits the power of the federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). Federal courts do not have the power to resolve disputes that are moot. *Hanrahan v. Mohr*, 905 F.3d 947, 960 (6th Cir. 2018). "[A] case becomes moot if the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Doster v. Kendall*, No. 1:22-cv-84, 2024 U.S. Dist. LEXIS 47201, at *6 (S.D. Ohio Mar. 18, 2024) (McFarland, J.) (citations omitted). "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the

7

parties." *Hanrahan*, 905 F.3d at 960 (citations omitted). Put differently, "a court must be able to grant 'effectual relief.'" *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (quotation omitted).

The policies that Mr. Stein challenges in his Complaint are no longer in effect. *See* Exec. Order No. 14099, Moving Beyond COVD-19 Vaccination Requirements for Federal Workers, 88 Fed. Reg. 30,891 (May 9, 2023) (rescinding the vaccination requirement for federal civilian employees); ECF No. 9-3, Force Health Protection Guidance—Coronavirus Disease 2019 and Other Infectious Respiratory Diseases (July 26, 2023) (ending the DOD's COVID safety measures). In fact, the U.S. Supreme Court instructed lower courts to vacate as moot previous orders enjoining the DOD's vaccine mandate. *Biden v. Feds for Med. Freedom*, 144 S. Ct. 480 (2023) (granting petition for certiorari, vacating the Fifth Circuit's judgment, and remanding the case with instructions to direct the district court to vacate as moot its order enjoining the vaccination requirement for federal civilian employees); *Kendall v. Doster*, 144 S. Ct. 481 (2023) (same but instructing lower courts to vacate as moot the Sixth Circuit's preliminary injunction enjoining the vaccine requirement for members of the armed services).

With no active COVID-19 vaccination, testing, or masking policy, there is nothing for this Court to enjoin. Even if the Court granted Mr. Stein's request for prospective injunctive relief, since there is no vaccination mandate, the relief sought would not "make a difference to the legal interests of the parties." *Hanrahan*, 905 F.3d at 960. Thus, Mr. Stein's claims for prospective injunctive relief are moot and must be dismissed. His claims for retrospective relief, however, are not moot. *See Powell v. McCormack*, 395 U.S. 486, 498 (1969) (explaining that a claim for damages is not rendered moot when a related injunctive relief claim becomes moot).

### B. Mr. Stein's religious discrimination claims under Title VII survive in part.

Mr. Stein raises three claims against Secretary Austin under Title VII.[3] Title VII prohibits employers from discharging or discriminating against any individual because of that individual's religion. 42 U.S.C. § 2000e-2. "There are two basic types of religious discrimination claims that an individual may bring . . . under Title VII: disparate treatment claims and religious accommodation claims." *Haskins v. Bio Blood Components*, No. 1:22-CV-586, 2023 U.S. Dist. LEXIS 27717, at *4 (W.D. Mich. Feb. 17, 2023) (quoting *Reed v. UAW,* 564 F.3d 781, 784 (6th Cir. 2009)). Mr. Stein appears to bring both types of claims. Mr. Stein has pled facts sufficient to maintain his religious accommodation claim, but not his disparate treatment claims.

#### i. Reasonable Accommodation Claim

Title VII requires employers to reasonably accommodate employees' religious beliefs, assuming the accommodation does not cause the employer undue hardship. To establish a prima facie case of religious discrimination for his employer's failure to provide a reasonable accommodation, Mr. Stein must show that "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015) (citation omitted).

"A plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint," because "the prima facie case is an evidentiary standard, not a pleading requirement." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 (6th Cir. 2024) (citing

---

[3] Although Mr. Stein's Complaint does not make clear that his Title VII claims are brought against Secretary Austin alone, actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c), require that "the head of the department, agency, or unit, as appropriate, shall be the defendant." *Hancock v. Egger*, 848 F.2d 87, 88–89 (6th Cir. 1988). Thus, the Court construes his Title VII claims against Secretary Austin, the head of the Department of Defense, only.

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). But the plaintiff must plead sufficient facts, that if believed, show that it was the "religious aspect of [his] conduct that motivated [his] employer's actions." *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (citation omitted).

Secretary Austin challenges whether Mr. Stein's religious belief was sincere and truly in conflict with the DOD's requirement that civilian employees either receive the COVID-19 vaccine, or submit to testing, masking, and social distancing. (Austin Mot., PageID 139–40.) Title VII defines religion broadly to include "all aspects of religious observance and practice." 42 U.S.C. § 2000e(j). Although the definition of religion is intended to be broad, it does not include every belief, opinion, or ideology one might embrace. *Prida v. Option Care Enters.*, No. 5:23-cv-00905, 2023 U.S. Dist. LEXIS 190298, at *10 (N.D. Ohio Oct. 24, 2023) (granting motion to dismiss plaintiff's challenge to COVID-19 policies because her beliefs were medical, rather than religious, in nature). If the view is "essentially political, sociological, or philosophical," it is not entitled to protection under Title VII. *Lawhead v. Brookwood Mgmt. Co., LLC*, No. 5:22-cv-00886, 2023 U.S. Dist. LEXIS 54355, at *6–10 (N.D. Ohio Mar. 29, 2023) (quotation omitted) (explaining that opposition to vaccination requirements was a political theory, not a religious one).

Courts are instructed to use a "light touch" when assessing the sincerity of a religious belief. *See Davis v. Fort Bend Cnty.*, 765 F.3d 480, 486 (5th Cir. 2014). When addressing religious objections to COVID-19 vaccine mandates the Sixth Circuit has adopted an especially light touch and repudiated efforts to question the veracity of a plaintiff's religious beliefs. *Sturgill v. Am. Red Cross*, 114 F.4th 803, 808 (6th Cir. 2024) (applying *Lucky v. Landmark Med. of Mich., P.C.*, 103 F.4th 1241, 1243 (6th Cir. 2024) and concluding it was enough at the pleading stage that the plaintiff alleged she prayed about whether to take the vaccine).

10

The question is whether Mr. Stein has alleged facts supporting an inference that his refusal to be vaccinated or to comply with testing and masking policies was an "aspect" of his religious observance, practice, or belief. *Lucky*, 103 F.4th at 1243 (citing 42 U.S.C. § 2000e(j)). He alleges that as a Christian he is "commanded to not defile his body with unwanted intrusions such as vaccines [and] nasal testing." (Compl., PageID 12.) To him, vaccines are an "affront to God" because his "body is the temple of the Holy Spirit" and he is required to keep it "pure." (*Id.*) Finally, "testing when you're not sick is a further transgression against God's truth." (*Id.*)

Mr. Stein's allegations support an inference that his refusal to be vaccinated was an aspect of his religious observance or practice or belief. Likewise, he sufficiently alleges that testing for the virus also conflicted with a religious observance, practice, or belief. (*Id.*) He has not, however, alleged how wearing a mask conflicted with his sincerely held religious beliefs. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) (holding that an employee is not entitled to the accommodation of their choice, but only a reasonable accommodation). For this Motion, the Court will assume, without deciding, that his belief is sincere and conflicted with his employer's requirements. *Sturgill* 114 F.4th at 808; *see also Henry v. S. Ohio Med. Ctr.*, No. 1:22-cv-00679, 2024 U.S. Dist. LEXIS 161562, at *6 (S.D. Ohio Sep. 9, 2024) (Barrett, J.) (finding it unnecessary to resolve this issue in context of COVID-19 safety protocols).

Secretary Austin does not dispute that Mr. Stein meets the final two requirements to satisfy his prima facie burden under Title VII. Mr. Stein alleges that he requested an accommodation to work from home and his employer denied that accommodation. (Compl., PageID 21, 26–28.) When he refused adhere to the safety protocols for unvaccinated employees—submitting to testing or wear a mask—he was disciplined and charged with AWOL, resulting in lost wages. (*Id.*)

Thus, as the *Sturgill* court explained, given the procedural posture and specific facts alleged, "we need not define the outer limits of Title VII's scope on this point." Rather, "we leave it to the parties to factually probe [Mr. Stein's] claims and [Secretary Austin's] actions during discovery" and expect that these facts will be tested on summary judgment. *Morrison v. E.W. Scripps Co.*, No. 1:23-cv-00279, 2024 U.S. Dist. LEXIS 215147, at *12 (S.D. Ohio Nov. 26, 2024) (Barrett, J.) (quoting *Sturgill*, 114 F.4th at 810–11.) Mr. Stein's claim for failure to accommodate is sufficiently pled to survive the Motion to Dismiss.

### ii.       Disparate Treatment Claim

A disparate impact religious discrimination claim requires somewhat different allegations. Plaintiff must plead: (1) that he was a member of a protected class, (2) that he experienced an adverse employment action, (3) that he was qualified for the position, and (4) that he was replaced by a person outside the protected class or that he was treated differently than similarly situated employees. *See Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).

Secretary Austin challenges factors (2) and (4). (Austin Mot., PageID 140–43.) The Court is not persuaded by Secretary Austin's argument that Mr. Stein "fail[ed] to plausibly allege that any purported adverse employment action resulted from [his] religious beliefs." (*Id.* PageID 142.) As discussed above, although Mr. Stein was not terminated for remaining unvaccinated, he was subject to the masking and testing protocol to which he claimed a religious objection. (Compl., PageID 12.) Because he refused to comply with that requirement, he alleges that he was "charged with AWOL" and lost wages. (*Id.* PageID 12.) He plainly suffered an adverse employment action.

Secretary Austin's argument that Mr. Stein failed to identify a similarly situated employee has more merit. To show that another employee was "similarly situated," Mr. Stein must allege that there was a non-protected employee who was treated more favorably and is "similar to the

12

plaintiff 'in all *relevant* respects.'" *Stewart v. Esper*, 815 F. App'x 8, 17 (6th Cir. 2020) (quoting

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in

original)). "Generalized and vague allegations that another employee was treated better" are

insufficient. *Stewart*, 815 F. App'x at 17.

Mr. Stein does not allege that he was treated differently than similarly situated employees.

He does not allege that an employee with similar qualifications who refused the vaccine received

his preferred accommodation to work from home. In fact, he only mentions similarly situated

employees in his prayer for relief when asking the Court to order the DOD to provide him and

other similarly situated employees with a reasonable accommodation. (Compl., PageID 139.)

Without a comparator, even under the liberal pleading standard for *pro se* litigants, the Court

cannot draw a reasonable inference that Mr. Stein was discriminated against due to his religion.

Accordingly, Mr. Stein has failed to state a claim on which relief may be granted, and his claim

must be dismissed.

### iii.    Hostile Work Environment Claim

Mr. Stein also raises a hostile work environment claim. To bring a claim under Title VII

for a hostile work environment, Mr. Stein must show that: (1) he was a member of a protected

class; (2) he was subject to unwelcome harassment; (3) that harassment was based on his protected-

class status; (4) the harassment created a hostile work environment; and (5) employer liability.

*Wehrly v. Allstate Ins.*, No. 23-5736, 2024 U.S. App. LEXIS 7378, at *8 (6th Cir. Mar. 27, 2024)

(citation omitted). "A hostile work environment exists when the 'workplace is permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting

*Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016)). The conduct must be so severe

or pervasive that it "alters the conditions of the victim's employment" and creates "an environment that a reasonable person would find hostile or abusive." *Id.* (*quoting Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)).

Mr. Stein offers two allegations to support his hostile work environment claim:

- Failure to adhere to current policies and procedures that grant Religious Reasonable Accommodations to religious people seeking vaccine, testing and masking exemptions create an exclusionary hostile working environment.
- Failure to properly investigate and provide documentation to religious discrimination complaints of religious people allows for the hostile environment to continue and create an exclusionary and hostile environment culture against religious persons.

(Compl., PageID 36.)

Secretary Austin argues that Mr. Stein has not asserted harassing conduct so severe and pervasive to create a hostile work environment. (Austin Mot., PageID 146–48.) This Court agrees. Besides asserting that he was charged with AWOL, Mr. Stein does not allege that he was harassed, ridiculed, or intimidated at all, let alone because of his religion. His employer's requests that he wear facial protection and submit to weekly COVID-19 testing, if he chose to remain unvaccinated, is not the kind of behavior that this cause of action was designed to guard against. Requiring unvaccinated employees to mask, social distance, or submit to testing does not create a workplace that a reasonable person would find hostile or abusive. *See, e.g.*, *Leake v. Raytheon Techs. Corp.*, No. CV-22-00436-TUC-RM, 2023 U.S. Dist. LEXIS 32177, at *16 (D. Ariz. Feb. 27, 2023) (dismissing plaintiff's claims for hostile work environment based on his employer's requirement that unvaccinated employees wear masks). As a result, Mr. Stein fails to meet his pleading standard, and his hostile work environment claim must be dismissed.

### C.  Mr. Stein's Religious Freedom Restoration Act claim is dismissed.

Mr. Stein alleges that Defendants violated his rights under the Religious Freedom Restoration Act ("RFRA"). Both Defendants move to dismiss his RFRA claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that the Court lacks jurisdiction to hear this case. (Austin Mot., PageID 148; McGuire Mot., PageID 109–20.) Secretary Austin argues that Mr. Stein's RFRA claim is barred by the doctrine of sovereign immunity, while Defendant McGuire argues that he is entitled to qualified immunity. (*Id.*)

### i.  Secretary Austin is entitled to sovereign immunity.

Sovereign immunity shields the federal government from suit, absent an explicit statutory waiver. *Gaetano v. United States*, 994 F.3d 501, 506 (6th Cir. 2021) (describing sovereign immunity as a jurisdictional bar). This immunity extends to federal officials sued in their official capacities. *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). Congress may only waive sovereign immunity through clear statutory language. *Dept. of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 49 (2024). The Supreme Court recognized that RFRA waives sovereign immunity in claims for damages against officials in their individual capacities. *Tanzin v. Tanvir*, 592 U.S. 43, 52 (2020). But officials sued for monetary damages in their official capacities are entitled to sovereign immunity. *Id.*

Mr. Stein brings his claim against Secretary Austin in his official capacity. (*See* Compl., PageID 7, 17.) He seeks both "monetary and non-monetary relief." (*Id.* PageID 6.) As the Court discussed above, his claims for "non-monetary" prospective injunctive relief are moot, and thus dismissed, leaving only his claim for damages. Mr. Stein has not provided authority that sovereign immunity was waived for monetary claims against officials in their official capacity. Secretary Austin is therefore entitled to sovereign immunity, and Mr. Stein's RFRA claim is dismissed.

15

### ii.     Defendant McGuire is entitled to qualified immunity.

Having dismissed Mr. Stein's RFRA claim against Secretary Austin, the Court now turns to Mr. Stein's RFRA claim against Defendant McGuire in his individual capacity. Congress authorized individual-capacity suits against government officials under RFRA. *See* 42 U.S.C. § 2000bb *et seq.*; *see also Tanzin*, 592 U.S. at 47. But Defendant McGuire reasons that qualified immunity shields him from liability here. (McGuire Mot., PageID 112–17.) He also argues that Mr. Stein fails to plead sufficient factual allegations to state a plausible claim for relief. (*Id.*) Because the Court finds that Defendant McGuire is entitled to qualified immunity, it need not address sufficiency of Mr. Stein's factual allegations.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Since qualified immunity is an immunity from suit, not just a defense to liability, whether a defendant is entitled to qualified immunity should be resolved at the earliest possible stage. *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022) (immunizing the defendants from the costs and burdens of a lawsuit in the first place). A defendant's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation marks omitted).

Defendant McGuire cannot be held liable unless Mr. Stein can point to "clearly established law" that would have put Defendant McGuire on notice that denying his request to work remotely imposed a substantial burden on his exercise of religion and violated the RFRA. Mr. Stein points

16

to RFRA and Title VII to argue that Defendant McGuire violated a clearly established right and is not entitled to qualified immunity. (McGuire Opp., PageID 208–09.) But the rights defined in both statutes are "far too abstract to rebut an assertion of qualified immunity." *Dixon v. Yellen,* No. 22-cv-3496 (APM), 2024 U.S. Dist. LEXIS 77051, at \*13 (D.D.C. Mar. 21, 2024) (concluding references to RFRA and Title VII were insufficient for qualified immunity). The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality" because doing so "avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced." *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018) (internal quotation marks omitted). Simply pointing to federal statutes "is of little help in determining whether the violative nature of particular conduct is clearly established." *See al-Kidd*, 563 U.S. at 742.

Mr. Stein also cites *Huri v. Off. of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 835 (7th Cir. 2015). There, the Seventh Circuit reversed the district court's order dismissing the plaintiff's Title VII claims based on qualified immunity. *Id.* The Court explained that the plaintiff had adequately pled a claim of religious discrimination where she was subject to "screaming, prayer circles, social shunning, implicit criticism of non-Christians, and uniquely bad treatment of [the plaintiff] and her daughter." *Id.* at 833–34 (describing the conduct as a "litany of malfeasance"). Because this conduct amounted to an obvious violation of Title VII, the Seventh Circuit found the defendants were not entitled to qualified immunity. *Id.*

Mr. Stein has pled no such "litany of malfeasance." *Huri* did not involve claims under RFRA or pertain to COVID-19 or analogous vaccine requirements. Thus, *Huri* is also not instructive as to whether Defendant McGuire acted reasonably in the circumstances he faced. Nor is the Seventh Circuit's decision binding on this Court. To be clearly established, plaintiffs must

17

point to "cases of controlling authority *in their jurisdiction* at the time of incident" or "a consensus

of cases of persuasive authority such that a reasonable officer could not have believed that his

actions were lawful." *See Wilson v. Layne*, 526 U.S. 603, 617 (1999) (emphasis added).

Mr. Stein points to "no such law that would have put [Defendant McGuire] on notice that

enforcing a vaccine mandate or a testing requirement, or rejecting [his] telework application,

violated the RFRA. Thus, qualified immunity shields [Defendant McGuire] from liability." *Dixon*,

2024 U.S. Dist. LEXIS 77051, at *15. Mr. Stein's claims against Defendant McGuire are

dismissed.

### D. Mr. Stein's intentional infliction of emotional distress claim is preempted by Title VII.

Mr. Stein also brings a state-law claim for intentional infliction of emotional distress

("IIED"). (Compl., PageID 38–39.) Generally, Title VII of the Civil Rights Acts of 1964 provides

the exclusive judicial remedy for claims of discrimination in federal employment. 42 U.S.C.

§ 2000e-16; *Brown v. GSA*, 425 U.S. 820, 835 (1976); *James v. Rumsfeld*, 580 F.2d 224, 225–26

(6th Cir. 1978). But some courts have "distinguished between discrimination claims and other

claims which, although arising out of the same facts and circumstances, seek to remedy injuries

other than workplace discrimination." *Wallace v. Henderson*, 138 F. Supp. 2d 980, 984 (S.D. Ohio

2000) (Rice, J.). To the extent that a state-law claim of intentional infliction of emotional distress

is identical to a plaintiff's claim of discrimination under Title VII, a plaintiff must proceed under

Title VII. *Barnhouse v. Brennan*, No. 2:17-cv-879, 2019 U.S. Dist. LEXIS 52450, at *10 (S.D.

Ohio Mar. 28, 2019) (Marbley, J.).

The facts that support Mr. Stein's state law IIED claim are identical to his Title VII claims.

He alleges that Defendants' failure to grant his requested accommodation caused him to "face

disciplinary actions, including and up to removal." (Compl., PageID 38–39.) He claims that "[a]ny

18

reasonable person understands that having one's livelihood at stake causes significant distress." (*Id.*) He describes Defendants conduct as "extreme" and "outrageous" and alleges that Defendants' "discriminatory actions" caused him to suffer damages. (*Id.* PageID 39.) Mr. Stein does not seek redress for a "highly personal injury beyond discrimination" and thus his IIED claim is not distinguishable from his discrimination claim under Title VII. *Barnhouse*, 2019 U.S. Dist. LEXIS 52450, at \*10 (quoting *Wallace*, 138 F. Supp. 2d at 986). Mr. Stein's IIED claim is preempted by Title VII and must be dismissed.

## IV.    CONCLUSION

For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** Secretary Austin's Motion to Dismiss. (ECF No. 9) and **GRANTS** Defendant McGuire's Motion (ECF No. 8). Mr. Stein's claim for prospective injunctive relief is moot and thus must be dismissed. His Title VII religious discrimination disparate treatment and hostile work environment claims are dismissed for failing to state a claim upon which relief may be granted. His RFRA claims are dismissed under Rule 12(b)(1) because Defendant McGuire and Secretary Austin are entitled to qualified immunity and sovereign immunity, respectively. Last, his state-law intentional infliction of emotional distress claim is preempted by Title VII and dismissed.

Mr. Stein's claims against Defendant McGuire are dismissed and the Clerk is directed to terminate Defendant McGuire as a Defendant. Mr. Stein may proceed only on his Title VII failure to accommodate claim against Secretary Austin.

This case remains open.

**IT IS SO ORDERED.**

**2/14/2025**                                              **s/Edmund A. Sargus, Jr.**
**DATE**                                                    **EDMUND A. SARGUS, JR.**
                                                            **UNITED STATES DISTRICT JUDGE**